UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/2022
```

DARREN BIRD,

                                   Plaintiff,

        -against-

COUNTY OF WESTCHESTER, et al.,

                                   Defendants.

No. 20-CV-10076 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Darren Bird ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1981, 1983 1985,

1986, and 1988 alleging violation of the Fourth and Fourteenth Amendments against the County

of Westchester ("Westchester"), B. Pectol, Sgt. McWilliams (together, the "County Defendants"),

Frank Oliveri[1], and John or Jane Doe 1-10 (all together, the "Defendants"). (ECF No. 11.) Before

the Court is the County Defendants' motion to dismiss. (ECF No. 24.) For the following reasons,

the motion is GRANTED in part and DENIED in part.

## BACKGROUND

        The following facts are taken from the Amended Complaint ("AC") and are construed in

the light most favorable to Plaintiff, the non-movant, and accepted as true for purposes of this

motion.

        Plaintiff is an African American male who resides in Bronx County. (AC ¶ 8.) On February

7, 2019 at approximately 6:40 PM, Plaintiff was an inmate inside the vicinity of the Westchester

County Jail (the "Jail"). (*Id*. ¶ 35.) Plaintiff had returned from court with several other inmates

---

[1] Defendant Oliveri has not been served and has therefore not appeared in this action. Pursuant to Federal
Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—
on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that
defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Therefore, the Amended
Complaint is dismissed as against Oliveri.

and was taken to the intake area of the Jail. (*Id.* ¶ 36.) Plaintiff and the other inmates were ordered to disrobe, squat down while naked, and cough, and Pectol, McWilliams, and John or Jane Doe 1-10 visually examined them for contraband. (*Id.* ¶ 37.) No contraband was discovered on Plaintiff's person. (*Id.* ¶ 39.) However, contraband was found secreted into the rectum of an inmate named "Stevens". (*Id.*) The contraband was misattributed to Plaintiff, and he was given an infraction for Promoting Prison Contraband. (*Id.* ¶ 40.) Plaintiff alleges that Defendants searched Plaintiff and falsely arrested him due to their discriminatory prejudices, desire to meet an arrest quota, and to benefit from increased overtime compensation. (*Id.* ¶ 54.) The matter was turned over to Defendants Oliveri and John or Jane Doe 1-10 to determine charges and initiate prosecution. (*Id.* ¶ 40.) Plaintiff was placed into an "administrative segregation" housing cell in which he was confined to his cell, denied recreation, exercise, and leave to obtain meals. (*Id.* ¶ 41.)

On February 18, 2019, the matter was administratively dismissed, and "Stevens" was indicated as the actual possessor of the contraband. (*Id.* ¶ 42.) The Westchester County Department of Corrections ("WCDOC") Disciplinary Report indicated that "Stevens" was the possessor of the contraband. (*Id.*) However, despite this dismissal, Defendants continued the prosecution of Plaintiff. (*Id.* ¶ 43.) A Criminal Court Complaint was signed by Defendant Oliveri affirming that Plaintiff was the possessor of the contraband. (*Id.* ¶ 44.) Defendants Pectol, McWilliams, Oliveri, and John or Jane Doe 1-10 provided false, misleading, or incomplete information to the District Attorney's Office, namely that Plaintiff had promoted prison contraband so that he may be prosecuted. (*Id.* ¶ 45.) The case was ultimately dismissed on December 5, 2019. (*Id.* ¶ 47.) Plaintiff alleges Westchester has a policy, custom, or pattern and practice of searching and arresting ethnic minorities without probable cause or reasonable suspicion, and for searching individuals without justification. (*Id.* ¶¶ 51-52.) Plaintiff further alleges that, upon information and belief, the personnel files, records, and disciplinary histories of the Defendants will reveal a

history of constitutional violations, and that Westchester has failed to correct this behavior.  (*Id.* ¶ 67-69.)  Plaintiff suffered loss of his liberty, reputational harm, loss of earnings and potential earnings, physical injury, and emotional distress.  (*Id.* ¶ 71.)

Plaintiff filed suit on December 1, 2020.  (ECF No. 1.)  The County Defendants filed a motion to dismiss on September 8, 2021.  (ECF No. 26.)  Plaintiff did not file an opposition.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency."  *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A

motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings federal causes of action for unlawful search and seizure, false arrest and false imprisonment, excessive force, malicious prosecution, malicious abuse of process, denial of his right to fair trial and due process, deprivation of rights and denial of equal protection of the laws, conspiracy to interfere with civil rights and failure to prevent the conspiracy, and failure to intervene.  (ECF No. 11.)  Plaintiff also brings state law claims for unlawful search and seizure, false arrest and false imprisonment, assault and battery, malicious prosecution, malicious abuse of process, denial of his right to fair trial and due process, deprivation of rights and denial of equal protection of the laws, failure to intervene, and negligent hiring, training, retention and supervision. (*Id.*)  The County Defendants aver that (1) Plaintiff fails to allege plausible claims of constitutional violations committed by the County Defendants; (2) Plaintiff fails to plead a plausible claim for *Monell* liability by Westchester; and (3) the Court should dismiss Plaintiff's state law claims. (Memorandum of Law ("Mem.") ECF No. 26 at 8-24.)  The Court will address each argument below.

### I.    Federal Claims

All of Plaintiff's federal causes of action are brought pursuant to Section 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes."  *Baker v. McCollan*, 443 U.S.

137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 . . . is not itself a source of substantive rights . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks omitted).  To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

### a.  Unlawful Search and Seizure

Plaintiff avers his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the County Defendants.  (AC ¶ 85.)  The Fourth Amendment protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend. IV.  This requires that searches of prison inmates be "reasonably related to legitimate security interests." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)).  Where a plaintiff is challenging an "isolated search" courts "typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016).  This test requires courts to consider "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted" to balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559.

For a claim related to the infringement of the right to bodily privacy, "a plaintiff must show that he had an actual, subjective expectation of bodily privacy, and that officials lacked a sufficient justification to intrude on the plaintiff's expectation of bodily privacy." *Lopez v. Phipps*, No. 18-CV-3605 (MKB), 2019 WL 2504097, at *4 (E.D.N.Y. June 17, 2019).  Strip searches do not violate the Fourth Amendment even in the absence of reasonable suspicion if they are performed pursuant

to policies that are "reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326; 330 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). This includes strip searching an inmate on the way to and from court appearances. *See Smith v. City of N.Y.*, No. 14 Civ. 5934 (JCF), 2015 WL 3929621, at *2–3 (S.D.N.Y. June 17, 2015) ("[T]he policy of strip searching inmates after contact visits or upon departing for court appearances does not, in itself, violate the Constitution.").

Here, Plaintiff alleges he and other inmates were strip searched after returning from court to ensure they were not carrying contraband. Conducting strip searches to determine whether inmates are carrying contraband before being let back into the Jail is a legitimate penological interest that has been upheld by courts within this Circuit. *See Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) (holding that "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches"); *Thomas v. Martin-Gibbons*, No. 19 Civ. 7695 (ER), 19 Civ. 7887 (ER), 2020 WL 5026884, at *9 (S.D.N.Y. Aug. 25, 2020) ("The Supreme Court has held that jails may require all inmates entering a correctional institution to undergo a strip search requiring them to expose their body and lift parts of their anatomy during the search — irrespective of the severity of their alleged offense."); *Thompson v. City of N.Y.*, No. 16 Civ. 824 (PKC), 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017) (holding that strip searches conducted upon entering and leaving the New York City Department of Correction facilities and during searches of the inmate's housing area "serve the legitimate penological purpose of preventing contraband from coming into and out of prisons and jails"). Therefore, Plaintiff has failed to include factual allegations showing any violation of the Fourth Amendment.

Accordingly, the County Defendants' motion to dismiss the unlawful search and seizure claim is granted.

**b. False Arrest and Imprisonment**

When analyzing a claim under Section 1983 for false arrest and imprisonment, the Court looks to New York law. *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). "A false imprisonment claim under New York law is identical to a false arrest claim." *Rebenstorf v. City of N.Y.*, No. 15 Civ. 5784(BMC), 2015 WL 6438765, at *2 (E.D.N.Y. Oct. 21, 2015) (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). To state a claim under Section 1983 for false arrest or false imprisonment, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). In other words, "[t]o establish a claim for false arrest under 42 U.S.C. §1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Further, "while prison custody is an entirely reasonable 'seizure' of a convicted felon, 'it may fairly be argued that the constitutional right to be free from unreasonable seizures . . . embraces the inmate[']s entitlement not to be subjected to a major further limitation on his liberty . . . on the mere whim of a correctional officer (for no penological purpose at all).'" *Miller v. Herbert*, No. No. 95–CV–360H, 1997 WL 626404, at *3 (W.D.N.Y. Sept. 24, 1997) (quoting *Leslie v. Doyle*, 868 F. Supp. 1039, 1044 (N.D. Ill. 1994)).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' . . . whether that action is brought under state law or under §1983." *Weyant*, 101 F.3d at 852 (citation omitted); *see also Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest.")). Probable cause "requires an officer to have 'knowledge or reasonably trustworthy information

sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). Probable cause may exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

Here, after the contraband was misattributed to Plaintiff, he was placed into an "administrative segregation" housing cell until the claim was dismissed. Plaintiff has demonstrated that due to the County Defendants' actions, he was subjected to further limitation on his liberty, namely being confined to his cell, denied recreation, exercise, and leave to obtain meals. (AC ¶ 41.) The County Defendants aver that they had probable cause to charge Plaintiff with possessing the contraband and therefore segregate him as it was misattributed to Plaintiff, and that Plaintiff has failed to provide facts showing bad faith on the part of the Defendants. (Mem. at 9-11.) However, Plaintiff does not have to show bad faith as "the defendant bears the burden of proving that probable cause existed." *Doe v. City of N.Y.*, No. 18-cv-670 (ARR) (JO), 2018 WL 3824133, at *4 (E.D.N.Y. Aug. 9, 2018). Further, the Amended Complaint alleges that the matter was administratively dismissed on February 18, 2019, when the WCDOC Disciplinary Report indicated that "Stevens" possessed the contraband, not Plaintiff. (AC ¶ 42.) The Amended Complaint further alleges that Defendants continued the prosecution of Plaintiff, and he was segregated until the charge was dismissed in December of 2019. (AC ¶ 43; 47; 49.) Even if the County Defendants first made a mistake in good faith when segregating Plaintiff, Plaintiff's allegations indicate that even when this mistake was rectified, they continued to prosecute and confine him in segregated housing. Therefore, the County Defendants did not have probable cause, and, at this stage, Plaintiff has satisfied the standard for false arrest and imprisonment.

Accordingly, the Court denies the County Defendants' motion to dismiss the false arrest and imprisonment claim.

### c. Excessive Force

Plaintiff next alleges excessive force under both the Fourth and Fourteenth Amendments.

#### i. Fourth Amendment

"'The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer' in the course of an arrest." *Graham v. City of N.Y.,* 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). "When excessive force is alleged, a court must determine 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128(PKC), 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). When determining whether excessive force was used against a plaintiff, a court balances "the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96. In doing so, a court looks to: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id*.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment" as officers must use some degree of force when arresting an individual. *Id*. at 396–97 (internal citation omitted). "Instead, the force used by the law enforcement officer must generally be more than *de minimis* for a claim to be actionable."

*Antic v. City of N.Y.*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d. Cir. 1993)).

      *ii.*     *Fourteenth Amendment*

A pretrial detainee's claims "are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner - neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Under *Kingsley v. Hendrickson*, any time a prison guard engages in excessive force against a pretrial detainee, even if there is no evidence of serious injury, there is always a constitutional violation because "pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" 576 U.S. 389, 400 (2015). In other words, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396–97.

A factfinder must apply an "objective reasonableness" standard that "turns on the facts and circumstances of each particular case." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 252 (2d Cir. 2020) (quoting *Kingsley*, 576 U.S. at 397). Important factors to consider include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. The factfinder must also "take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id*. at 399–400. Balancing those needs, force which "is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose" fails the test. *Id.* at 398.

Here, Plaintiff's claim fails under both standards.  Plaintiff merely alleges that the County Defendants perpetrated "assaults" and "batteries" against him and caused him "physical injury." (AC ¶¶ 57; 71.)  Plaintiff fails to include any facts showing that any of the County Defendants used excessive force, or any force, on him.  In fact, Plaintiff's allegations state that the Defendants "visually examined Plaintiff and the other inmates" (AC ¶ 37), there is no indication that any Defendant ever laid a hand on Plaintiff or any other inmate during the search.  Therefore, his claim fails.

Accordingly, Plaintiff's excessive force claim is dismissed.

### d.  Malicious Prosecution

Plaintiff next alleges that his Fourteenth Amendment rights were violated due to malicious prosecution.  (AC ¶¶ 116-121.)  However, "[t]he Supreme Court and Second Circuit have held that a claim for malicious prosecution, if brought under the Constitution, must be brought under the Fourth Amendment rather than under the substantive due process provisions of the Fourteenth Amendment." *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 133 (D. Conn. 2010) (citing *Albright v. Oliver*, 510 U.S. 266, 271–75 (1994).  Therefore, the Court will evaluate Plaintiff's claim under the Fourth Amendment.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted).  In order to establish a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a

motivation for defendant's actions." *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

The probable cause standard in a malicious prosecution claim is "slightly higher" than that required in a false arrest case. *Stansbury v. Wertman*,721 F.3d 84, 95 (2d Cir. 2013). New York law requires "such facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty." *Id*. To hold a police officer liable for malicious prosecution, an officer "must do more than report the crime or give testimony," he must "be found to have initiated the prosecution." *Culpepper v. City of N.Y.*, No. 14-CV-6585(ALC), 2016 WL 5334978, at *5 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks omitted) (quoting *Manganiello*, 612 F.3d at 163). When analyzing such a claim, there is a presumption that the "prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Alcantara v. City of N.Y.*, 646 F. Supp 2d 449, 457 (S.D.N.Y. 2009) (quoting *Crenshaw v. City of Mount Vernon*, No. 06-CV-2722, 2008 WL 445223, at *8 (S.D.N.Y. Sept. 30, 2008)). The presumption may be rebutted where an officer "play[s] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act", *Manganiello*, 612 F.3d at 163 (internal quotation marks omitted) (quoting *Rohman v. N.Y. City Transit Auth.*, 215 F.3d, 208, 217 (2d Cir. 2010)), or "provid[ing] false information to a prosecutor." *Cameron v. City of N.Y.*, 598 F.3d 50, 63–64 (2d Cir. 2010).

Here, the County Defendants aver that Plaintiff has failed to provide facts to support the element of malice. (Mem. at 12.) "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). The Amended Complaint conclusively alleges that Plaintiff was "maliciously prosecuted" due to Defendants' "racially

discriminatory prejudices, their desire to meet an arrest quota and to benefit from increased overtime compensation." (AC ¶ 54.) As the County Defendants argue, Plaintiff fails to include any facts to support these allegations. *See Nieves v. Cnty. of Monroe*, 761 F. Supp. 2d 48, 52 (W.D.N.Y. 2011) ("Conclusory or speculative allegations are insufficient: plaintiff must *specifically* allege that the named defendants acted with malice.") (emphasis in original).

However, "in most cases, the lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 207–08 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Boyd v. City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003) ("[a] lack of probable cause generally creates an inference of malice."). While at one point the County Defendants may have had facts and circumstances that would lead a reasonably prudent person to believe Plaintiff owned the contraband, this was debunked when "Stevens" was found to be the actual owner. The Court therefore holds that the County Defendants did not have probable cause while continuing the prosecution of Plaintiff, and therefore malice may be inferred. [2]

Accordingly, the Court denies the County Defendants' motion to dismiss the malicious prosecution claim.

### e. Malicious Abuse of Process

To make out a claim for malicious abuse of process under Section 1983, a plaintiff must plausibly allege that he was denied a federal right. *See Hoffman v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) (summary order). The Second Circuit has held that "where the

---

[2] Defendants also aver that Plaintiff has failed to satisfy the "favorable termination" element as just alleging the charges were dismissed is insufficient. (Mem. at 12-13.) However, in *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022), the Supreme Court held that "a Fourth Amendment claim under §1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Therefore, Plaintiff has satisfied the favorable termination element.

process alleged to have been abused is criminal in nature, an adequately pled claim for malicious abuse of process is 'by definition a denial of procedural due process.'" *Id.* (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

Federal courts look to state law to determine the elements of an abuse of process claim. *See Cook*, 41 F.3d at 80.  In New York, a malicious abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Savino v. City of N.Y.*, 331 F.3d 63, 69–70 (2d Cir. 2003) (internal quotation marks omitted).  To plead a collateral objective, a plaintiff must plausibly plead "not that defendant acted with an improper motive, but rather an improper purpose—that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'"  *Douglas v. City of N.Y.*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (quoting *Savino*, 331 F.3d at 77).  Although malicious prosecution and malicious abuse of process are similar, malicious prosecution is the improper issuance of process, while malicious abuse of process is improper use of process after it has been legally issued.  *Cook*, 41 F.3d at 80.

Here, the County Defendants aver that Plaintiff failed to allege that they used the criminal process against him in an improper fashion after it was issued.  (Mem. at 14-15.)  The Court agrees. *See Rodriguez v. City of New York*, No. 17-cv-12 (KBF), 2018 WL 2371719, at * (S.D.N.Y. May 24, 2018) (dismissing abuse of process claim where "plaintiff has <u>not</u> alleged that Officer Gale, notwithstanding his motivation in issuing criminal process, has subsequently <u>used</u> that process in an improper fashion—<u>e.g.</u>, to extort money or to coerce some action.") (emphasis in original). Plaintiff merely alleges that he was criminally prosecuted due to the County Defendants'

discriminatory prejudices, desire to meet a quota, and to benefit from overtime compensation.  He includes no allegations reflecting any wrongdoing undertaken after the prosecution was issued.

Accordingly, the County Defendants' motion to dismiss the malicious abuse of process claim is granted.

### f.   Denial of Right to a Fair Trial

Plaintiff next alleges the County Defendants violated his right to a fair trial pursuant to the Sixth and Fourteenth Amendments.  (AC ¶ 147.)  "[W]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under" Section 1983.  *Lewis v. City of N.Y.*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997)).  Such an action is warranted when "the allegedly fabricated evidence 'is the officer's own account of his or her observations of alleged criminal activity, which he . . . then conveys to a prosecutor.'"  *Lauderdale v. City of N.Y.*, No. 15-CV-1486 (JGK), 2018 WL 1413066, at *8 (S.D.N.Y. Mar. 19, 2018) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016)).

"To state a claim for lack of a fair trial due to the fabrication of evidence, Plaintiff must show that an '(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'"  *Barnes v. City of N.Y.*, No. 18-cv-7119 (AJN), 2020 WL 6947424, at *4 (S.D.N.Y. Nov. 25, 2020) (citing *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012)).  The "manufacture of false evidence, in and of itself . . . does not impair anyone's liberty," *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) (internal quotation marks omitted), and therefore "in

order to state a legally sufficient claim . . . a plaintiff must colorably allege that this evidence . . . cause[d] a constitutional injury," *Rolon v. Henneman*, 517 F.3d 140, 148 (2d Cir. 2008).

Here, Plaintiff alleges the County Defendants "gave false, misleading, or incomplete information to the District Attorney's Office, namely that [Plaintiff] had promoted prison contraband, so that a criminal prosecution would be initiated against [him]." (AC ¶ 45.)  However, Plaintiff fails to allege that the County Defendants actually fabricated evidence.  "For fabrication, Plaintiff must show that the officers knew the statements were false and made them anyway." *Barnes*, 2020 WL 6947424, at *4.  In the Amended Complaint, Plaintiff merely alleges in a conclusory fashion that the County Defendants "knowingly and intentionally" gave false information (AC ¶ 45), he provides no facts to support this conclusion.  Based on the allegations in the Amended Complaint, the contraband was "misattributed" to Plaintiff (AC ¶ 40), and therefore it follows that the County Defendants genuinely believed that Plaintiff was the owner of the contraband at the time they provided this information to the District Attorney's Office.

Accordingly, the County Defendants' motion to dismiss Plaintiff's denial of a right to fair trial claim is granted.

### g.  Deprivation of Rights and Denial of Equal Protection

Plaintiff next brings a claim for the deprivation of rights and denial of equal protection pursuant to Sections 1981 and 1983.  (AC ¶¶ 159-167.)  As "plaintiffs must meet the same pleading standard for their § 1981 claims as for their § 1983 claims under the Equal Protection Clause", *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999), the Court will evaluate these claims together.

The Fourteenth Amendment declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated

alike.'" *Brown*, 221 F.3d at 337 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'"  *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

Here, Plaintiff alleges that the County Defendants "subjected Plaintiff to disparate treatment compared to other individuals similarly situated, because Defendants did not pull over any white inmates, who were actually promoting prison contraband in the Defendants' view." (AC ¶ 60.)  However, this contravenes Plaintiff's allegations that he and "several other inmates" who "returned from court . . . were ordered to completely disrobe, squat down while naked and cough" and that the County Defendants "visually examined Plaintiff and the other inmates . . . ."  (*Id.* ¶ 36-37.)  Plaintiff does not allege that he was treated differently from any of the other inmates that returned from court.  Plaintiff further does not specify a time where he was treated differently from any white inmate, or where white inmates who were promoting contraband were not prosecuted by the Defendants.  Therefore, Plaintiff's claim fails.

Accordingly, the County Defendants' motion to dismiss Plaintiff's deprivation of rights and denial of equal protection claim is granted.

### h.  Conspiracy

Plaintiff next alleges a conspiracy to interfere with civil rights or failure to prevent the conspiracy pursuant to Sections 1981, 1983, 1985, and 1986.  As an initial matter, a plaintiff may not bring a conspiracy claim under Section 1981.  *See Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 465 (S.D.N.Y. 2012) ("Although § 1981 may serve as the predicate for a conspiracy claim under 42 U.S.C. § 1985, § 1981 does not itself provide a mechanism for recovering upon a claim of

conspiring to violate § 1981.").  The Court will examine Plaintiff's claims brought under Sections 1983, 1985, and 1986 below.

### iii.    Section 1983

To plead a conspiracy under Section 1983, a plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "[T]he pleadings must present facts tending to show agreement and concerted action" and therefore conclusory allegations are insufficient.  *Banks v. City of White Plains Police*, No. 14 CV 670 (VB), 2014 WL 6642360, at *3 (S.D.N.Y. Oct. 17, 2014).  Moreover, "a civil conspiracy claim does not set forth an independent cause of action but rather is sustainable only after an underlying claim has been established." *Gonzalez v. City of N.Y.*, No. 1:18-cv-2197-GHW, 2020 WL 158432, at *4 (S.D.N.Y. Jan. 13, 2020) (quoting *DeMartino v. N.Y.S. Dep't of Labor*, 167 F. Supp. 3d 342, 373 (E.D.N.Y. 2016)).

Here, Plaintiff alleges that "Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of the equal protection of the laws, or of the privileges and immunities under the laws" and that they were "motivated by some racial, or otherwise class-based, invidious discriminatory animus."  (AC ¶¶ 169; 172.)  This allegation is related to Plaintiff's deprivation of rights and denial of equal protection claim.  As already detailed in this Opinion, that claim fails as it is not adequately pled.  Because there is no underlying claim to support Plaintiff's conspiracy allegations, the Court grants the County Defendants' motion to dismiss Plaintiff's Section 1983 conspiracy claim.

### iv.    Section 1985

As Plaintiff is "not a federal official and his claims are not related to the participation of witnesses in judicial proceedings," Sections 1985(1) and 1985(2) do not apply.  *Morgan v. Dzurenda*, No. 3:14-cv-966(VAB), 2016 WL 6826156, at *4 (D. Conn. Nov. 18, 2016).  To state

a conspiracy under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Critically, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"  *Id.* (quoting *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Here, as discussed above, Plaintiff has failed to allege any facts showing any of the County Defendants acted with discriminatory motivation.  Plaintiff merely alleges in a conclusory fashion that the County Defendants acted with "racially discriminatory prejudices" when searching him. (AC ¶ 54.)  That is insufficient.  The Court therefore grants the County Defendants' motion to dismiss the Section 1985 conspiracy claim.

     *v.*    *Section 1986*

Section 1986 provides that any "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be liable to the injured party.  42 U.S.C. § 1986; *see also Secard v. Wells Fargo Bank, N.A.*, No CV-15-499 (JS) (ARL), 2015 WL 6442563, at *4 (E.D.N.Y. Sept. 9, 2015) (construing Plaintiff's Section 1983 "refusing or neglecting to prevent" claim as brought under Section 1986), *report & recommendation adopted*, 2015 WL 6442346 (E.D.N.Y. Oct. 23, 2015).  A Section 1986 claim "must be predicated on a valid Section 1985 claim and, in the absence of such a predicate claim, must be dismissed."  *Cater v. N.Y.*, 316 F. Supp. 3d 660, 672 (S.D.N.Y. 2018) (citing *Brown*, 221 F.3d at 341.

Here, as Plaintiff has failed to plead a valid Section 1985 claim, his claim brought under Section 1986 must also be dismissed.  Accordingly, the County Defendants' motion to dismiss Plaintiff's conspiracy claims brought under Sections 1981, 1983, 1985, and 1986 is granted.

### i.  Failure to Intervene

Plaintiff's last federal claim is for failure to intervene.  (AC ¶¶ 180-182.)  "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  Liability may attach where an officer observes or has reason to know: (1) "that excessive force is being used"; (2) "that a citizen has been unjustifiably arrested"; or (3) "that any constitutional violation has been committed by a law enforcement official." *Id*.  For an officer to be held liable, he or she must have had "a realistic opportunity to intervene" to prevent the violation from happening.  *Id*. (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).  However, "there can be no failure to intervene claim without a primary constitutional violation." *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015).  Further, where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. *Simon v City of N.Y.*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's failure to intervene claim "because these same officers actually arrested her.").

Here, Plaintiff brings a failure to intervene claim as "[t]hose Defendants that were present but did not actively participate in the . . . unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene."  (AC ¶ 180.)  However, Plaintiff fails to allege facts showing any of the Defendants committed a constitutional violation in the presence of the County Defendants.  Instead, the

Amended Complaint alleges broadly that the County Defendants directly participated in the claimed constitutional violations.

Accordingly, the County Defendants' motion to dismiss Plaintiff's failure to intervene claim is granted.

## II.    *Monell* Liability

The claims in the Amended Complaint are also brought against Westchester and Pectol and McWilliams in their official capacities.  For municipalities and officers acting in their official capacities, liability under Section 1983 may not be found on a *respondeat superior* theory solely because the municipality or officer employs the actor who commits the wrongdoing or violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Under *Monell*, a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

The Second Circuit uses a two-prong approach in determining *Monell* liability for Section 1983 claims. *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).  First, the plaintiff must plead "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.*  Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. Cnty. of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To plead an official custom or policy, a plaintiff must allege one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted).

If a plaintiff alleges *Monell* liability for a municipality or official based on an unofficial policy or

custom, then the practice, custom, or usage must be so widespread and persistent that it has the

force of law.  *Goode v. Westchester Cnty.*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3

(S.D.N.Y. May 24, 2019).  However, "a single incident alleged in a complaint, especially if it

involved only actors below the policy-making level, does not suffice to show a municipal policy."

*DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d

119, 122 (2d Cir. 1991) (internal quotation marks omitted)).

Alternatively, where municipal liability is based on a failure to train employees, the

inadequate training itself must "reflect[ ] deliberate indifference to . . . constitutional rights."  *City

of Canton*, 489 U.S. at 392.  To allege deliberate indifference, a plaintiff must properly plead

(1) "that a policymaker knows to a moral certainty that [his or] her employees will confront a given

situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that

training or supervision will make less difficult or that there is a history of employees mishandling

the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the

deprivation of a citizen's constitutional rights."  *Okin v. Village of Cornwall-On-Hudson Police

Dep't*, 577 F.3d 415, 440 (2d Cir. 2009).

Here, the Amended Complaint alleges broadly that Westchester "has engaged in a policy,

custom, or pattern and practice of searching and arresting ethnic minorities without probable cause

or reasonable suspicion" and "illegally searching unlawfully individuals without any justification

to so do."  (AC ¶¶ 51-52.)  The Amended Complaint also alleges that Defendants "are part of a

larger pattern and practice of similar misconduct, which was so widespread, pervasive, and

consistent" that the constitutionally violative behavior is "tantamount to an official policy or custom." (AC ¶ 61.)  Plaintiff's claims are insufficient as they are purely conclusory.  *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 536 (2d Cir. 1993) (affirming dismissal of *Monell* claim where "[t]he complaint contained only conclusory and speculative assertions" that the alleged conduct occurred "pursuant to the practice, custom, policy and particular direction of" the supervisory official); *Yaa-Lengi Ngemi v. Cnty. of Nassau*, 87 F. Supp. 3d 413, 419 n.6 (E.D.N.Y. 2015) ("the Court holds that the conclusory allegations of a policy and practice, and a lack of training/supervision, are insufficient to state a plausible *Monell* claim")

Further, Plaintiff fails to allege the existence of any other similar incident, which "dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Dumel v. Westchester Cnty.*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021) (quoting *Ruiz v. Westchester Cnty.*, No. 18-CV-7007, 2020 WL 4340788, at *7 (S.D.N.Y. July 28, 2020)); *see also Pittman v. City of N.Y.*, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014) ("A Monell claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects th[e] incident to a municipal policy or practice.")

Next, the Amended Complaint alleges that "policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used." (AC ¶ 64.)  A failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.  Without any further factual allegations, Plaintiff's claim that Westchester was aware of these

issues and failed to train, supervise, or discipline their employees is a legal conclusion rather than a factual allegation sufficient to state a *Monell* claim.  *See Quick v. Westchester Cnty.*, No. 18-CV-243 (KMK), 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged the failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that the defendant lacked "a relevant training or supervisory program" or that it "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison,* 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").  Plaintiff has not cited any deficiencies in Westchester's training or supervision protocols.

Accordingly, the federal claims against Westchester, as well as Pectol and McWilliams in their official capacities are dismissed.

### III.    State Law Claims

Lastly, the County Defendants avers that Plaintiff's state law claims are precluded due to his failure to comply with General Municipal Law § 50-h.  (Mem. at 24-25.)  Section 50-h states:

> [w]herever a notice of claim is filed against a city, county, town, village, fire district, ambulance district or school district the city, county, town, village, fire district, ambulance district or school district shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate . . . The action . . . may not be commenced until compliance with the demand for examination if the claimant fails to appear at the hearing or requests an adjournment or postponement beyond the ninety day period.

N.Y. Gen. Mun. Law § 50-h(1); (5).  In federal court, "a 'plaintiff's failure to attend a 50-h [h]earing—*no matter the reason*—is a complete bar to his state law claims[.]'"  *Foy v. City of N.Y.*, No. 1:17-CV-0406, 2019 WL 3717317, at *9 (E.D.N.Y. Aug. 7, 2019) (emphasis in original)

(quoting *Duncan v. City of N.Y.*, No. 11-CV-3901 (ENV) (JO), 2018 WL 3421312, at *3 (E.D.N.Y. July 13, 2018)).

Here, the County Defendants aver the Court must dismiss Plaintiff's state law claims for failure to comply with the oral examination requirement of 50-h as he failed to attend the scheduled examination.  (Mem. at 24-25.)  However, the claims may only be dismissed against Westchester and the other County Defendants in their official capacities.  As "§ 50-h does not refer to claims filed against 'officers, appointees and employees' of municipal corporations . . . [it] does not bar these claims after Plaintiff's failure to attend a municipally scheduled hearing." *Bradley v. Golphin*, No. 14-CV-4289 (NGG) (RML), 2018 WL 480754, at *4 (E.D.N.Y. Jan. 18, 2018) (holding § 50-h did not bar the plaintiff's claim against defendants sued in their individual capacities); *see also Nolan v. Cnty. of Erie*, No. 1:19-cv-01245, 2020 WL 1969329, at *6 (W.D.N.Y. Apr. 24, 2020) (dismissing state law claims against the County Defendant only as the claims brought against the defendants in their individual capacities "are not subject to dismissal for failure to comply with a demand for examination").

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's state law claims against Westchester, as well as against Pectol and McWilliams in their official capacities only.[3]

## CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff's claims against the County of Westchester and Frank Oliveri, as well as his claims against B. Pectol and Sgt. McWilliams in their official capacities are dismissed without prejudice.  Plaintiff's federal causes of action for unlawful search and seizure, excessive

---

[3] Defendants also argue the Court should dismiss Plaintiff's state law claims as "retaining jurisdiction over state law claims is unwarranted where federal claims do not survive." (Mem. at 24.)  As at least one of Plaintiff's federal claims has survived, the Court will not address this argument.

force, malicious abuse of process, denial of his right to fair trial and due process, deprivation of rights and denial of equal protection of the laws, conspiracy to interfere with civil rights and failure to prevent the conspiracy, and failure to intervene are also dismissed without prejudice. Plaintiff's remaining claims include his Section 1983 claims for false arrest and imprisonment and malicious prosecution, and his state law claims against Defendants B. Pectol and Sgt. McWilliams in their individual capacities only. Plaintiff is granted leave to file a Second Amended Complaint in accordance with this Opinion and Order by July 8, 2022. Defendants are then directed to answer or otherwise respond by July 29, 2022.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 24, and to terminate the Westchester County Department of Corrections and Westchester County Police Department as Defendants.

Dated:    June 23, 2022                                    SO ORDERED:
          White Plains, New York

_____
          NELSON S. ROMÁN
          United States District Judge